UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| D.K., | Case No. 20-cv-07821-LB |
| Plaintiff, | |
| v. | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| KILOLO KIJAKAZI, | |
| Defendant. | |
| | Re: ECF No. 24, 25 |

# INTRODUCTION

The plaintiff D.K. seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying his claim for social security disabled adult child (DAC) insurance benefits under Title II of the Social Security Act.[1] The plaintiff moved for summary judgment, the Commissioner opposed the motion and filed a cross-motion for summary judgment, and the plaintiff filed a reply.[2] Under Civil Local Rule 16-5, the matter is submitted for decision by this court without oral argument. The court grants the plaintiff's motion, denies the Commissioner's motion, and remands for further proceedings.

---

[1] Compl. – ECF No. 1 at 1–3; Mot. – ECF No. 24 at 1, 3. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 24; Cross-Mot. – ECF No. 25; Pl. Reply – ECF No. 26.

ORDER – No. 20-cv-07821-LB

**STATEMENT**

**1. Procedural History**

The plaintiff filed an application for supplemental security income (SSI) and DAC benefits in 2012.[3] In 2013, he was granted prospective SSI benefits based on his then-present impairments but denied DAC benefits due to insufficient evidence of impairment before age 22, as required for DAC benefits.[4] In November 2017, the plaintiff re-applied for DAC benefits, with new allegations of PTSD and autism-spectrum disorder before age 22.[5] The Commissioner denied the plaintiff's claim on December 19, 2017 and again on March 27, 2018.[6] On May 3, 2018, the plaintiff asked for a hearing before an Administrative Law Judge (ALJ).[7] On August 30, 2019, the ALJ held a hearing and heard testimony from the plaintiff and a vocational expert.[8] The ALJ issued an unfavorable decision on October 30, 2019.[9] On September 11, 2020, the Appeals Council denied the plaintiff's request for review, and the ALJ's decision became the final administrative decision.[10] The plaintiff was represented by his non-attorney mother throughout these proceedings.[11] The plaintiff filed this action on November 5, 2020 and the parties each moved for summary judgment.[12] All parties consented to the undersigned's jurisdiction.[13]

---

[3] AR 207.

[4] AR 208.

[5] AR 208, 284–93.

[6] AR 226–34.

[7] AR 235.

[8] AR 146–205.

[9] AR 67–75.

[10] AR 7–11.

[11] AR 375.

[12] Compl. – ECF No. 1; Mot. – ECF No. 24; Cross-Mot. – ECF No. 25.

[13] Consent Forms – ECF Nos. 6, 10.

**2. Medical Records**

The plaintiff contends that he is disabled because of the following conditions: autism-spectrum disorder, anxiety disorder, PTSD, chronic fatigue, body aches, pain in his legs, back, and arms, and depressive disorder.[14]

The following medical records were submitted to the ALJ: (1) hospital records from San Francisco General Hospital;[15] (2) a comprehensive psychiatric evaluation from Mathilde Weems, M.D.;[16] (3) a comprehensive internal medicine evaluation by Mary S. Gable, M.D., M.P.H.;[17] (4) treatment records from Marin Community Clinic;[18] (5) a comprehensive psychiatric evaluation from Melody Samuelson, Psy.D.;[19] (6) an autism-spectrum disorder assessment from Patrick MacLeamy, Psy.D.;[20] and (7) a discharge summary from CPC Belmont Hills Hospital.[21] In addition to the records submitted to the ALJ, the plaintiff also submitted letters from Dr. MacLeamy and his primary care provider to the Appeals Council.[22]

Because the plaintiff challenges the ALJ's rejection of examining psychologist Dr. MacLeamy's assessment of autism-spectrum disorder, this order recounts that assessment fully.

Dr. MacLeamy evaluated the plaintiff for autism-spectrum disorder on August 22, 2017 and September 7, 2017. The evaluation took a total of six hours. The evaluation consisted of the

---

[14] AR 303.

[15] AR 573–80.

[16] AR 581–85.

[17] AR 586–591.

[18] AR 592–609, 619–23, 640–49, 667–708.

[19] AR 610–18.

[20] AR 624–37.

[21] AR 655-58.

[22] AR 63–66, 94. The Appeals Council did not address whether good cause existed for the plaintiff's failure to submit these records to the ALJ and instead found that there was not a reasonable probability that these records would have changed the outcome of the ALJ's decision. AR 8–9. Accordingly, the court considers these documents part of the record in determining whether the ALJ's decision is supported by substantial evidence. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.") (citation omitted).

ORDER – No. 20-cv-07821-LB                3

following: (1) a review of the plaintiff's records; (2) a clinical interview and observation of the plaintiff; (3) a clinical interview of the plaintiff's mother; (4) direct behavioral and developmental observation; (5) application of the Wechsler Adult Intelligence Scales; (6) application of the Adaptive Behavior Assessment System, 3rd Edition: Parent and Self; (7) application of the Autism Diagnostic Observation Schedule-2, Module # 4; and (8) application of the Social Responsiveness Scale, 2nd Edition.[23]

After listing the components of the evaluation, Dr. MacLeamy's report detailed the plaintiff's presenting concerns and developmental history, based on Dr. MacLeamy's interview of the plaintiff and the plaintiff's mother and review of past reports and documentation. Dr. MacLeamy noted that, between the ages of three and six, the plaintiff would run in circles, flap his hands, and spin his body around and around. He also noted that the plaintiff's complex language skills were slow to develop. Conversation has always been difficult for the plaintiff and he has a tendency to speak over others and become tangential. His nonverbal gestures are often exaggerated, and his facial expressions often do not match his emotions. He did not have good eye contact as a child, and he did not always want to look at others' facial expressions. He does better listening and comprehending verbal input when he looks away from the speaker. Social and emotional cues have been historically challenging for the plaintiff to read and respond to appropriately.[24]

As a child, the plaintiff had behavioral issues and was recommended Ritalin at one point, but his mother declined that recommendation. He played on his own a good deal, did not engage with other children frequently, was often bullied, did not want physical affection or hugs, and broke lots of things and had a lot of tantrums. His school records show that he had problems with attention regulation and completing work promptly, and he was placed in special-education classes in sixth grade. He completed ninth grade but did not complete tenth grade.[25]

---

[23] AR 624.
[24] AR 625–27.
[25] *Id.*

Dr. MacLeamy also noted the plaintiff's history of uncomfortable sensory experiences. As a child, he would experience sensory overload from people's voices being too loud and would run out of the classroom at school or hold his ears and say, "too much noise." He was very averse to light as a child and would wear sunglasses inside. He did not like bathing because he disliked the feeling of water on his skin.[26]

The plaintiff was hospitalized at age 15 with depression, suicidal ideation, malaise, anhedonia, isolation, crying spells, and some paranoid ideation. The plaintiff saw therapists during his teenage years, and was prescribed Zoloft and Paxil, which he never took. The plaintiff ran away from home many times as a teenager, often to other states.[27]

Dr. MacLeamy further noted that the plaintiff has longstanding difficulties with attention regulation and has a family history of various mental-health conditions. He does not currently have many friends. He obsesses over details and ideas, has trouble letting go, and then gets frustrated.[28]

After describing the plaintiff's developmental history, Dr. MacLeamy then summarized previous evaluations of the plaintiff and described the plaintiff's work and educational history.[29]

Next, Dr. MacLeamy noted his observations of the plaintiff's behavior and the results of the plaintiff's mental-status exam. Dr. MacLeamy stated that the plaintiff appeared to put forth good effort during the evaluation. The plaintiff was able to engage in chitchat with the examiner, but was very tangential and had to be constantly re-oriented, making it difficult to maintain a free-flowing conversation with him. The plaintiff had reasonably well-modulated eye contact at times, but had a somewhat limited repertoire of facial expressions and a somewhat flat vocal tone. The plaintiff was oriented to person, place, and time and denied the presence of auditory or visual hallucinations.[30]

---

[26] AR 627.

[27] AR 625–26.

[28] AR 626–27.

[29] AR 627.

[30] AR 628.

Dr. MacLeamy then discussed the results of the plaintiff's testing. Dr. MacLeamy found that the plaintiff had an average full-scale IQ.[31] On the Social Responsiveness Scale, a parent and self-completed checklist, both the plaintiff and his mother rated the plaintiff in the "severe" range of impairment for autism-spectrum disorder symptoms.[32] On the Autism Diagnostic Observation Schedule 2, the plaintiff's scores fell in the "autism" range.[33] On the Adaptive Behavior Assessment System, 3rd Edition, both the plaintiff and his mother rated the plaintiff's adaptive functioning as either low or extremely low in all categories.[34]

Finally, Dr. MacLeamy concluded that the plaintiff met the criteria for a DSM-V diagnosis of autism-spectrum disorder. This conclusion was based on his behavioral observations, the descriptions of the plaintiff's current functioning, the assessments performed by Dr. MacLeamy, and the plaintiff's developmental history.[35]

### 3. Administrative Proceedings

#### 3.1 Disability-Determination Explanations

During the administrative process, non-examining doctors generated two disability-determination explanations, one at the initial level and one at the reconsideration level.

At the initial level, J. Schnitzler, D.O., determined that there was insufficient psychiatric evidence before the plaintiff turned 22 to adjudicate the claim.[36] On reconsideration, James R. Buskirk, M.D. agreed with this assessment.[37]

---

[31] AR 628–30.

[32] AR 630–31.

[33] AR 631–32.

[34] AR 632–34.

[35] AR 634.

[36] AR 209.

[37] AR 220.

### 3.2 Administrative Hearing

On August 30, 2019, the ALJ held a hearing and heard testimony from the plaintiff and vocational expert (VE) Susan Allison.[38]

The ALJ questioned the plaintiff. He testified that he is homeless and lives in his car.[39] He has been homeless since he was 14 or 15 years old and would run away from home to avoid the abuse of his father and brothers.[40] He was in special-education classes starting in sixth grade and dropped out of school in tenth grade.[41] He was prescribed Zoloft and Paxil when he was a teenager, but felt they did not work so he stopped taking them, and he currently does yoga for therapy.[42] He used marijuana and alcohol regularly up until about two years before the hearing, when he quit both.[43] The plaintiff worked as a gardener for a while, but eventually quit when he no longer felt he could physically or mentally do the job.[44] The plaintiff was not sure if, before age 22, he would have been able to perform a simple job that did not involve working with other people and did not change, because he was not sure such a job existed.[45]

The plaintiff's mother, who was acting as his representative, also questioned the plaintiff. He testified that he has sensory problems that started around the age of five. As a child, he had night terrors and saw visions of structures being built of neon, which led to him being unable to sleep at night and being tired and falling asleep during the day. He gets overstimulated by bright lights and certain sounds.[46] He also testified that, because of the abuse by his father, he has trouble trusting people and that interferes with his ability to work.[47]

---

[38] AR 146–205.
[39] AR 167.
[40] AR 174.
[41] AR 167–69.
[42] AR 174–75.
[43] AR 172.
[44] AR 169–74.
[45] AR 176–78.
[46] AR 178–80.
[47] AR 186–87.

VE Allison also testified. She testified that the plaintiff's prior relevant work would be categorized as groundskeeper/gardener.[48]

The ALJ posed the first hypothetical to the VE: a hypothetical individual of the plaintiff's age, education, and past work experience limited to (1) reasoning level 1 or 2, (2) simple routine, repetitive, tasks, not at a fast production pace, (3) few changes in the work setting, (4) simple work-related decisions, (5) occasional interaction with supervisors, and (6) brief superficial interaction with co-workers or the public. Under this hypothetical, the VE testified that the individual could perform a variety of jobs existing in the national economy, including hand packager, laborer: stores, and bagger: garment and laundry.[49]

The ALJ then posed the second hypothetical, adding the limitation that the individual would be off-task 15 percent of the workday. Under this hypothetical, the VE testified the individual would not be able to find competitive work.[50]

The ALJ posed the third hypothetical to the VE: the same limitations as hypothetical one, with the added limitations of: (1) noise limited to moderate and (2) lighting limited to moderate, office-level lighting. The VE testified that an individual with those limitations could still perform the same jobs listed in response to hypothetical one.[51]

The ALJ posed the fourth hypothetical to the VE: the same limitations as hypothetical one, with the added limitations of: (1) low-level noise and (2) low-level lighting. The VE testified that an individual with those limitations could perform the jobs of marker, basket filler, and assembler: plastic hospital parts.[52]

The ALJ posed the fifth hypothetical to the VE: the same limitations as hypothetical four, with the added limitation that the individual would need to be able to wear noise-canceling headphones. The VE testified that an individual with those limitations would be able to perform the same jobs

---

[48] AR 189.

[49] AR 190–91.

[50] AR 191–92.

[51] AR 197–98.

[52] AR 199–200.

as identified for hypothetical four, but some employers might not allow headphones, so the number of positions available nationally would be decreased by about 50 percent.[53]

### 3.3 ALJ Findings

The ALJ found that the plaintiff had not attained age 22 as of the alleged onset date and had not engaged in substantial gainful activity since the alleged onset date.[54] The ALJ then found, however, that, before the plaintiff attained age 22, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment.[55] The ALJ therefore concluded that the plaintiff was not disabled before he attained age 22.[56]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965) (citation omitted). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v.*

---

[53] AR 202–03.

[54] AR 73.

[55] *Id.*

[56] AR 75.

*Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted), *superseded by regulation on other grounds*.

## GOVERNING LAW

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). A medically determinable impairment must "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques" and must be established by "objective medical evidence." 20 C.F.R. § 404.1521.

"Objective medical evidence" means signs, laboratory findings, or both. *Id.* § 404.1502(f). For mental impairments, "signs" include "psychiatric signs," which are "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated." *Id.* § 404.1502(g). Likewise, laboratory findings for mental impairments include "psychological phenomena that can be shown by the use of . . . psychological tests." *Id.* § 404.1502(c). Objective medical evidence can be contrasted with "medical opinions," which are statements by doctors about what an individual can still do despite their impairments, and "symptoms," which are an individual's own description of their physical or mental impairments. *Id.* §§ 404.1502(i), 404.1513(a)(2).

For individuals applying for DAC benefits who are over the age of 18 and not full-time students, the individual must show that the disability began before they attained age 22. *Id.* § 404.350(a)(5).

# ANALYSIS

The plaintiff contends the ALJ erred by finding no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment before the age of 22. The court remands for further proceedings on this basis.

### 1. Whether the ALJ Erred in Finding No Objective Medical Evidence of a Medically Determinable Impairment Before Age 22

The ALJ's exact finding regarding a medically determinable impairment was that "[p]rior to the date the claimant attained age 22, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment."[57] In making this finding, the ALJ appeared to impose an improper evidentiary requirement.

The ALJ began by correctly stating that (1) a medically determinable impairment must be based on objective medical evidence, 20 C.F.R. § 404.1521, and (2) to receive DAC benefits, the plaintiff had to show that he was disabled before he attained age 22, *id.* § 404.350(a)(5).[58] The ALJ then conflated these two requirements into a single, erroneous, requirement that the plaintiff had to produce objective medical evidence from the time period before he attained age 22. This conflation is clear from the ALJ's wording, which focuses on the lack of medical signs or laboratory findings in existence before the date the claimant attained age 22. It is also clear from the fact that the ALJ discounted all the examining physicians' opinions because they were "not supported by any tests or examinations during the relevant period."[59]

Social Security rulings and case law confirm that the ALJ's evidentiary requirement was improper. Later-acquired objective medical evidence can be used to show the existence of a medically determinable impairment as of an earlier date, so long as the earlier onset can be reasonably inferred from the objective medical evidence. *Smith v. Bowen*, 849 F.2d 1222, 1225–26 (9th Cir. 1988) ("[M]edical evaluations made after the expiration of a claimant's insured status are

---

[57] AR 73.
[58] *Id.*
[59] AR 74.

relevant to an evaluation of the pre-expiration condition.") (citation omitted); *Hartman v. Bowen*, 636 F. Supp. 129, 132 (N.D. Cal. 1986) ("In this case, plaintiff must establish that a disability existed prior to December 31, 1966. However, plaintiff is not confined . . . to evidence in existence prior to that date."); Social Security Ruling 83-20, 1983 WL 31249, at *3 (S.S.A. 1983) ("In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination.").

Here, the plaintiff submitted a report by Dr. MacLeamy, in which Dr. MacLeamy performed multiple assessments of the plaintiff that indicated that the plaintiff has autism-spectrum disorder.[60] The ALJ treated these assessments as medical opinions and assessed their persuasiveness,[61] as is required for medical opinions. 20 C.F.R. § 404.1520c(b). The ALJ determined that these assessments were "not persuasive" because they were (1) "based mostly on the claimant's mother's own report" and (2) not supported by any examinations or tests before the plaintiff attained age 22.[62] This was error.

Dr. MacLeamy's assessments are not medical opinions because they are not statements about what the plaintiff can still do despite his impairments. *See* 20 C.F.R. § 404.1513(a)(2). These assessments include Dr. MacLeamy's observations of the plaintiff's psychological abnormalities and the results of psychological tests performed by Dr. MacLeamy on the plaintiff.[63] The assessments therefore constitute "signs" and "laboratory findings" substantiating the existence of a medically determinable impairment of autism-spectrum disorder. 20 C.F.R. § 404.1502(c) & (g); *see also Hartman*, 636 F. Supp. at 132 ("[W]hen mental illness is the basis of a disability claim, as in this case, clinical and laboratory data may consist of the diagnoses and observations of professional psychiatrists and psychologists.") (citation omitted). The assessments also substantiate an onset of the impairment before age 22, because autism-spectrum disorder is a

---

[60] AR 624–37.

[61] AR 74.

[62] *Id.*

[63] AR 628–36.

condition that, by definition, begins in early childhood, well before age 22.[64] The ALJ therefore erred in treating Dr. MacLeamy's assessments as medical opinions and not as objective medical evidence of a medically determinable impairment before age 22.

In addition to applying the wrong legal framework, the ALJ's reasons for rejecting Dr. MacLeamy's assessments are insufficient. First, as discussed above, the fact that Dr. MacLeamy's assessments were not based on examinations before the plaintiff attained age 22 is not a legally sufficient reason to find that there is no objective medical evidence of the existence of a medically determinable impairment before age 22. *Smith*, 849 F.2d at 1225 ("It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis.") (citation omitted).

Second, the ALJ's statement that Dr. MacLeamy's assessments were "based mostly on the claimant's mother's own report"[65] is not supported by substantial evidence in the record. Dr. MacLeamy's assessments were based on his review of the plaintiff's records, his interviews of the plaintiff and the plaintiff's mother, his own direct behavioral and developmental observations, an intelligence test, and four separate clinical tests designed to assess autism.[66] The ALJ cited no evidence to suggest that the plaintiff's mother's reports received undue weight in Dr. MacLeamy's assessments.

The ALJ therefore erred in applying the wrong legal standards, treating Dr. MacLeamy's assessments as medical opinions, rejecting Dr. MacLeamy's assessments for legally and factually insufficient reasons, and finding no objective medical evidence of the existence of a medically determinable impairment before age 22. These errors were not harmless, as the ALJ's conclusion that the plaintiff was not disabled before age 22 was based on her finding that there was no objective medical evidence of a medically determinable impairment during that timeframe.[67] Remand is thus warranted.

---

[64] AR 636; *see also* AR 63, 66, 94.

[65] AR 74.

[66] AR 624, 634; *see also* AR 65–66.

[67] AR 73–75.

**2. Remand**

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citation omitted); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court.") (citation omitted). Generally, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (quotation omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.") (citation omitted).

Here, further proceedings would not be useless. Because the ALJ found no objective medical evidence of a medically determinable impairment before age 22, she did not proceed to the remaining steps in the disability determination.[68] Accordingly, it remains to be seen how severe the plaintiff's impairments were, whether the plaintiff's impairments met or medically equaled the criteria of a listed impairment, what the plaintiff's residual functional capacity was, whether the plaintiff could return to his past relevant work, or whether the plaintiff could adjust to other work. *See* 20 C.F.R. § 404.1520(a)(4). Those determinations should be made by the ALJ in the first instance.

## CONCLUSION

The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion, and remands for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: August 30, 2021

LAUREL BEELER
United States Magistrate Judge

---

[68] *See* AR 73–75.